UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF VIRGINIA

ROANOKE DIVISION

```
* * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,    * CRIMINAL NO. 7:13-CR-00013
                             * SEPTEMBER 26, 2013  9:40 A.M.
              Plaintiff,     * SEALED EXCERPT OF MOTION HEARING
                             *
vs.                          *
                             *
WILLIAM A. WHITE,            * Before:
                             * HONORABLE JAMES C. TURK
              Defendant.     * UNITED STATES DISTRICT JUDGE
* * * * * * * * * * * * * * * WESTERN DISTRICT OF VIRGINIA
```

APPEARANCES:

For the Plaintiff:    C. PATRICK HOGEBOOM, III, ESQUIRE
                      LAURA DAY ROTTENBORN, ESQUIRE
                      United States Attorney's Office
                      P.O. Box 1709
                      Roanoke, VA 24008


For the Defendant:    PAUL G. BEERS, ESQUIRE
                      Glenn, Feldmann, Darby & Goodlatte
                      210 First Street, S.W., Ste. 200
                      Roanoke, VA 24001




Court Reporter:       Judy K. Webb, RPR
                      210 Franklin Road, S.W., Room 540
                      Roanoke, Virginia 24011
                      (540)857-5100 Ext. 5333

        Proceedings recorded by mechanical stenography,
transcript produced by computer.

1    (Court convened at 9:40 a.m., with proceedings being held
2 and filed under separate cover.)
3         THE COURT:  Mr. White, would you come up to the
4 podium so the court reporter can hear you better.
5         THE DEFENDANT:  Your Honor, I don't want Mr. Beers to
6 withdraw as counsel.  We've had one real sticking point/issue
7 where I thought he was being very irrational with it.
8         But then this morning he just received some new
9 evidence that demonstrates what I've been trying to tell him
10 all along, and I think he actually agrees the evidence shows
11 that.  So I think the issue may be worked out.
12        What happened was this girl, Ms. Gnos, who turned me
13 in, was the one using my e-mail accounts, and Mr. Beers did
14 not believe me.  But he just got some e-mails that she sent
15 from my account, that she signed, from somebody who received
16 them.  So he's now agreeing with me that it looks like she was
17 the one who was using them.
18        But the issue that was getting me so frustrated
19 yesterday -- there's been a couple of issues.  But right from
20 the beginning, I told him what I wanted to do in the case, and
21 I just told him if he can't represent me like that, not to
22 wait until the last minute to tell me.
23        And then I thought we worked -- we had some issues; I
24 thought we worked it out over the weekend.  He come in the
25 jail yesterday, and there were e-mails and Facebook posts made

after I was arrested in Mexico. And I am certain that I was arrested at 2:40 p.m., in Mexico, because it was right as I hung up the phone, on the last tape.

The tape and the phone records show that it was 2:40 p.m. The U.S. marshals issued a press release saying I was arrested about 3:00 p.m. It all demonstrates that.

The government has one document from their marshals e-mailing each other, where the time stamps I think are clearly wrong.

And all I asked Mr. Beers to do was come to the jail and bring the tapes and Ms. Gnos's phone records and these e-mails, and look at them all together, and see if these time stamps aren't wrong. Because one of these marshals is sending an e-mail at 2:30, and another one is responding, and it says "noon." And you can't respond to something at noon that happened at 2:30.

So all said is, "Let's sit down and look at it." And Mr. Beers agreed to do it with me three times; then he came by the jail yesterday and he just didn't have it, and he got very emotional with me, and so we had a dispute.

And I just told him, you know, this is so important that somebody was still on the accounts after I was arrested, that, you know, just to not take the 15 to 30 minutes to look at it was really upsetting me.

But then I come to court this morning, and Mr. Beers

has received e-mails that were sent from my -- somebody who received e-mails from this account, that are signed with Sabrina's name, that she clearly sent out of my account. And I think that that solves -- and we need to talk about it and put the evidence together so he can demonstrate that.

So I didn't even want him to withdraw. I just wanted him to sit down and listen to me when I was trying to show him this issue with the times.

THE COURT: Well, I'll tell you, Mr. Beers, you know, is a very competent attorney. He works hard for his clients. If I was in a case that needed an attorney, I certainly wouldn't hesitate to call on him. He is an excellent attorney.

THE DEFENDANT: I agree with you. He just gets very emotional.

THE COURT: And I want you to have the best.

THE DEFENDANT: Yes. He was just getting very emotional with me, and he was really being irrational about it.

But I think we worked it out, because when I came to court this morning, he said, "I just got a bunch of new evidence, and it looks like maybe you're telling the truth."

So I think we worked it out, but I think we just need more time to go over the stuff that these people just gave us this morning. That's why he is asking for a continuance.

1        THE COURT: Let's leave Mr. Beers as your attorney.
2        THE DEFENDANT: Yes.
3        THE COURT: Would you bring the U.S. attorney back in
4 and we'll talk about the continuance.
5     (Further proceedings were held and filed under separate
6 cover.)
7     (Court recessed at 10:01 a.m.)
8
9                           CERTIFICATE
10 I,  Judy K. Webb, certify that the foregoing is a
11 correct transcript from the record of proceedings in
12 the above-entitled matter.
13
14 /s/  Judy K. Webb              Date:  1/22/16