CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 27 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Criminal Action No. 7:13CR00013 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| WILLIAM A. WHITE, | ) |
| | ) By: Hon. Glen E. Conrad |
| Defendant. | ) Chief United States District Judge |
| | ) |

The case is presently before the court on the defendant's pro se motion for a new trial. For the following reasons, the motion will be denied.

### Background

William A. White was charged in a four-count indictment on February 7, 2013. Counts One through Four charged White with transmitting threats in interstate commerce with the intent to extort, in violation of 18 U.S.C. § 875(b). The factual background surrounding the threats was summarized by the United States Court of Appeals for the Fourth Circuit in United States v. White, 810 F.3d 212 (4th Cir. 2016).

On November 1, 2013, after a three-day trial, a jury found White guilty of three counts under § 875(b) and one count of a lesser included offense of transmitting a threat in interstate commerce without an intent to extort, in violation of 18 U.S.C. § 875(c). On May 1, 2014, the court sentenced White to a term of imprisonment of 92 months.[1] The Fourth Circuit affirmed the criminal judgment against White on January 7, 2016.

---

[1] The underlying case was originally assigned to Senior United States District Judge, James C. Turk, who presided at the trial. Judge Turk is now deceased, and the motion for new trial is before the undersigned district judge.

On April 1, 2016, White filed a motion for new trial based on newly discovered evidence. On April 13, 2016, the court stayed consideration of the motion pending a decision from the Supreme Court of the United States on White's petition for writ of certiorari. The Supreme Court denied White's petition on May 2, 2016. White v. United States, 136 S. Ct. 1833 (2016). On May 13, 2016, White filed a motion to supplement his motion for a new trial with additional grounds for relief. The motions are now ripe for disposition.[2]

## Discussion

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 contemplates two grounds for a motion for a new trial. First, the defendant may move for a new trial based on newly discovered evidence within three years after the guilty verdict. Fed. R. Crim. P. 33(b)(1). Second, the defendant may move for a new trial for "any reason other than newly discovered evidence" within 14 days after the guilty verdict. Fed. R. Crim. P. 33(b)(2). Under either approach, the Fourth Circuit has observed that a trial court "should exercise its discretion to grant a new trial sparingly, and that it should do so only when the evidence weighs heavily against the verdict." United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotations omitted).

### I. Newly Discovered Evidence

White moves for a new trial, in large part, based on newly discovered evidence. The Fourth Circuit applies a five-part test to determine whether newly discovered evidence warrants a new trial: (1) the evidence is newly discovered; (2) the defendant used due diligence; (3) the

---

[2] Because White's motion for a new trial was stayed pending the Supreme Court's decision, the government has not filed an opposition brief. The court, however, is of the opinion that such pleading, as well as oral argument, would not aid the decisional process.

2

evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably result in an acquittal at a new trial. United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993). A motion for a new trial must be denied if the defendant cannot establish all five factors. United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). In his motion, White argues that several pieces of newly discovered evidence entitle him to a new trial. The court will address each basis in turn.

### a. Virus

White first argues that he is entitled to a new trial based on evidence that the email account from which the threatening emails were sent, dhyphen@yahoo.com, was infected with a "backdoor Trojan virus" and "keylogger." Def.'s Mot. For New Trial 3, Docket No. 239. White believes that this virus allowed an unknown third party to access his accounts during the relevant time period in this case. At White's subsequent criminal trial in the United States District Court for the Middle District of Florida (the "Florida trial"), White presented testimony of Richard Connor, an expert in computer forensics.[3] Connor examined the evidence that had been provided by the government in that case, which consisted, in part, of the entirety of the evidence collected in this case. Based on his analysis, Connor testified that an attachment in a single email sent to the dhyphen@yahoo.com account had contained a virus.

The court concludes that this evidence does not meet the high standard necessary to warrant a new trial. First, the court does not believe that the information from Connor's testimony is "newly discovered," as White admits that the materials Connor analyzed in preparation for the Florida trial had consisted of the same evidence in this case. See United

---

[3] In support of his motion for a new trial, White attaches excerpts from Connor's testimony. The court notes that several pages of Connor's testimony, to which White cites in his brief, are missing from these attachments. In order to properly consider White's motion, the court accessed Connor's complete testimony through Public Access to Court Electronic Records ("PACER").

3

States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1989) (noting that newly discovered evidence is evidence that has been "discovered since the trial"). Second, White has not shown that he used due diligence to uncover this information. In fact, White concedes that he had retained an expert in computer forensics for this case, and that the expert did not find a virus on White's computer. A defendant is not entitled to a new trial "so that he may employ a different strategy" by offering testimony from a new expert witness. United States v. Melvin, 39 F. App'x 43, 49 (4th Cir. 2002) (unpublished); see also United States v. White, No. 7:08-cr-00054, 2010 WL 1462180, at *3 (W.D. Va. Apr. 12, 2010) (Turk, J.) ("White strategically decided to challenge the prosecution's version of events without presenting any witnesses or evidence; consequently he cannot be heard to demand a new trial to employ a new strategy."). Third, and most importantly, the court is not convinced that Connor's testimony is material or would probably result in White's acquittal at a new trial. Upon closer examination of Connor's testimony, the court notes that Connor conceded that the mere fact that an attachment to an email contains a virus does not necessarily mean that the computer itself is infected. In fact, Connor admitted that he did not know whether White's computer had been infected, as Connor had not analyzed the computer. In the court's view, despite White's characterization of Connor's testimony, such information concerns how computer viruses generally operate and does not establish whether a third party had access to White's accounts at the time of the instant offenses. During White's trial in this case, defense counsel argued that someone had hacked into White's computer and sent the threatening messages to White' estranged wife ("MW"). That argument was rejected by the jury, and the court is not convinced that a new jury will acquit White based on Connor's testimony.

4

Case 7:13-cr-00013-GEC   Document 272   Filed 06/27/16   Page 4 of 17   Pageid#: 3498

### b. Affidavit of Brett Stephens

White also contends that, after the trial in this case, an individual named Brett Stephens came forward with evidence that White's computer had been hacked. In Stephens' letter, he notes that he observed erratic and inconsistent use of White's Facebook account, which caused Stephens to believe that the account had been compromised. Stephens then details the susceptibility of White's computer to hackers. Specifically, Stephens points out that White visited websites that were easy to hack, and that White frequently used public Wi-Fi.

Although Stephens' letter may qualify as "newly discovered" because White obtained it after trial, the court notes that the letter is not notarized nor sworn under the penalty of perjury under 28 U.S.C. § 1746. The court has previously declined to accept such information as "evidence." See United States v. Witasick, No. 4:07-cr-00030-001, 2014 WL 1355433, at *4 (W.D. Va. Apr. 7, 2014) (Kiser, J.) ("I cannot and will not accept the word of a purported witness who neither testifies in open court to his new assertions, nor will consent to signing a declaration under the penalties of perjury.").

Even if the court could accept Stephens' letter as newly discovered evidence, White has not established that such evidence entitles him to a new trial. First, White has not demonstrated that he used due diligence to uncover this information, in that Stephens was "unknown to [White] or that [White] was somehow prevented from securing his testimony." Id. In fact, White admits in his brief that records possessed by the government in this case at least referenced Stephens and his connection to White's Facebook account. Second, in the court's view, Stephens' letter is merely cumulative of the evidence presented in this case that revealed Sabrina Gnos' use of White's accounts. At trial, White presented testimony of Richard Sellers, Chief Deputy from the United States Marshals Service, who testified that a press release had indicated

5

that White had been arrested at 3:00 p.m. on June 8, 2012.[4] When questioned about certain activity on his Facebook account after this time, White testified that such activity was not initiated by him, as he had already been apprehended. White also stated that Gnos had access to his Facebook account, and that he had not used Facebook in Mexico. In the court's view, Stephens' letter would have been "additional evidence to that which was presented at trial as to a fact." United States v. Fulcher, 250 F.3d 244, 250 (4th Cir. 2001) (quoting United States v. White, 972 F.2d 16, 21 (2d Cir. 1992)). Furthermore, Stephens' observations of activity on White's Facebook account add "very little to the probative force of the other evidence in the case." Id. (quoting United States v. Kizeart, 102 F.3d 320, 325 (7th Cir. 1996)). The court believes that Stephens' letter contains mere speculations and conjectures as to this activity. In fact, White admitted during cross-examination that he had given Gnos access to his Facebook account and had advised her to post certain information on his behalf. As such, Stephens' observation of unusual activity on White's Facebook account would add little support to the evidence that was already presented at trial.

Finally, the court also does not believe that Stephens' letter is material or would probably result in White's acquittal at a new trial. Although Stephens claims that he is a consultant with almost 25 years of experience, the court cannot view his statements as anything beyond "unsubstantiated assertions." Witasick, 2014 WL 1355433, at *4. In addition to the fact that Stephens' letter lacks any proof as to his qualifications in the field of computer security, the letter consists of statements regarding the security flaws of certain websites used by White, as well as Stephens' observations of unusual activity on White's Facebook account. He does not opine that White's computer was hacked or otherwise compromised, or that someone else used

---

[4] At trial, the government introduced evidence that White had been arrested between 4:00 p.m. and 5:00 p.m. on June 8, 2012.

6

White's Facebook account after White had been arrested. As such, the court does not believe that a jury in a new trial would acquit White based on this general information.

### c. Unnamed Witness #1

White next argues that he is entitled to a new trial based on information from a person he refers to as "Unnamed Witness #1," who reluctantly came forward after White's trial in the instant case. In support of this argument, White attaches a document purportedly authored by Unnamed Witness #1. Ex. E to Def.'s Mot. For New Trial, Docket No. 244-1. In that document, Unnamed Witness #1 alleges that another individual, who White refers to as "Perpetrator #1," accused White of being a government informant in a Facebook post on May 27, 2012. Unnamed Witness #1 also asserts that Perpetrator #1 led her to believe that he had taken certain actions against White. Specifically, White contends that Unnamed Witness #1 told him that Perpetrator #1 had stolen White's identity.

The court will not accept an unsigned, unsworn, and unsubstantiated document as having any evidentiary force for the same reasons discussed in the previous section. The court also will not accept as evidence White's assertion that Unnamed Witness #1 orally informed him that she believed that Perpetrator #1 had stolen White's identity. The court does not believe that such evidence is material because nothing in Unnamed Witness #1's statement concerns the specific offenses in this case, but that Perpetrator #1 had admitted to stealing White's identity generally.

Even if the court could find that such information constituted material, newly discovered evidence, White has failed to demonstrate that the evidence would probably result in his acquittal at a new trial. The court believes that Unnamed Witness #1's testimony as to what Perpetrator #1 told her would likely be inadmissible hearsay under the Federal Rules of Evidence.

7

### d. Testimony of Sabrina Gnos

White's fourth ground in support of his motion for new trial is based on Sabrina Gnos' testimony during White's subsequent Florida trial on September 10, 2014. White argues that Gnos' testimony in that case contradicted her testimony in this case. However, new evidence that bears only on the credibility of a witness "does not generally warrant the granting of a new trial," but "[t]here may be an exceptional 'rare case' that would justify granting a new trial solely on the basis of impeachment evidence." Custis, 988 F.2d at 1359.

White first argues that he is entitled to a new trial based on Gnos' testimony at the Florida trial as to her memory and mental infirmities.[5] Specifically, Gnos testified that she had "issues remembering" and was on "50 different medications, like new medications." Ex. B to Def.'s Mot. For New Trial, Docket No. 243-1. Gnos also admitted that she had anxiety.

The court does not believe that such testimony entitles White to a new trial. In his motion, White admits that, prior to the trial in the instant case, Gnos' father had given an interview, in which he stated that Gnos had been diagnosed with "some sort of a disorder" as a child. Def.'s Mot. For New Trial at 25. As such, the court does not believe that White has shown that information regarding Gnos' mental health, extrapolated from her testimony in the Florida trial, was newly discovered. White also cannot show that he exercised due diligence in obtaining this information. Gnos testified at the trial in this case, and defense counsel had the opportunity to cross-examine her regarding her ability to recall the events surrounding the underlying offenses and any reasons why her memory may have been impaired. Most importantly, it is clear that this information could only be characterized as impeaching evidence, which is not an adequate basis for a new trial. See Mesarosh v. United States, 352 U.S. 1, 9 (1956) (holding that

---

[5] In support of his motion for new trial, White attaches excerpts from Gnos' testimony. The court notes that several pages of Gnos' testimony, to which White cited in his brief, are missing from these attachments. In order to properly consider White's motion, the court accessed Gnos' complete testimony through PACER.

8

"new evidence which is merely ... impeaching is not ... an adequate basis for the grant of a new trial"); see also United States v. Robinson, 627 F.3d 941, 949 (4th Cir. 2010) (denying motion for new trial because "the evidence [was] offered to cast doubt on the testimony" of police officers, which is "as textbook an example of impeachment evidence as there could be"). In his motion, White even concedes that he seeks to attack Gnos' credibility at a new trial.

Next, the court cannot conclude that such information is material. Information is "material" if it goes to the "issues involved in the case." Custis, 988 F.2d at 1359. Whether Gnos' memory was impaired at the Florida trial has no bearing on whether her memory was impaired a year prior during her testimony in this case. In other words, Gnos did not testify at the Florida trial that her memory was impaired when she testified before this court, or that her memory had been impaired for at least a year. Instead, at the Florida trial, Gnos stated that her thinking was not affected by her medications because she had been on them long enough. Moreover, the fact that Gnos had been on new medications when she testified during the Florida trial does little to establish whether she had been on any medication during the trial in this case, despite White's arguments to the contrary. In the court's view, Gnos may have referred to the medications as "new" because she had never taken such medications before. Finally, the court does not believe that White has demonstrated that Gnos' testimony would probably result in his acquittal at a new trial. In this case, defense counsel sought to attack Gnos' credibility based on her criminal history. Even if evidence as to Gnos' mental health would create a stronger credibility issue for a new jury, the court is not convinced that White would be acquitted based on such evidence.

Although White characterizes Gnos' testimony in this case as perjured, the court is not persuaded. Newly discovered evidence that a witness committed perjury may be grounds for a

9

new trial, as long as the witness has recanted his or her testimony. United States v. Roberts, 262 F.3d 286, 293 (4th Cir. 2001); see also United States v. Maynard, 77 F. App'x 183, 188 (4th Cir. 2003) (holding that the test under Roberts as to whether to grant a new trial based on perjured testimony is only implicated when a witness recants his or her trial testimony). If the motion for new trial is based on a witness' recantation of trial testimony, the motion should be granted only if: (1) the court is reasonably satisfied that the testimony given by a material witness was false; (2) the jury might have reached a different conclusion without the false evidence; and (3) the party seeking the new trial was surprised by the false testimony and was unable to meet it or did not know of its falsity until after trial. United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976).

Gnos has not recanted her trial testimony in this case. Even if the court could find that Gnos' testimony during the Florida trial implicitly recanted her testimony in this case, the court is not "reasonably well satisfied" that "the testimony given by a material witness is false." Id. (quoting United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976)). White alleges that Gnos informed the FBI, prior to the trial in this case, that she did not suffer from a mental illness and was not on medications. At trial, Gnos was not asked about her mental state or whether she took any medications. It is possible that Gnos began her medications at some point between the trial in this case and the Florida trial. In fact, Gnos' testimony at the Florida trial alluded to the fact that her medications were new. Therefore, the court is not convinced that Gnos' testimony in this case was false.

White also argues that he is entitled to a new trial because Gnos testified during the Florida trial as to the contents of two envelopes that White had given to her to mail to MW and his mother. The envelopes contained the user names and passwords for some of White's

10

accounts. White contends that, at the trial in this case, the government presented testimony of David Church, who testified that Gnos had told him that she had not opened the envelopes. As an initial matter, the court notes that White's characterization of Church's testimony is inaccurate. Church's testimony did not concern whether Gnos had opened the letters. Instead, when asked whether Gnos knew where MW lived, Church merely stated that Gnos had an envelope addressed to her. It was not until the Florida trial that Church claimed that the envelopes had appeared to be unopened.

Again, the court is not convinced that Gnos' testimony as to the contents of the envelopes in her possession warrants granting White a new trial. First, the court does not believe that such information constitutes newly discovered evidence, or that White used due diligence to uncover this information. White knew that Gnos had the envelopes because he was the one who gave them to her. White also admits that he was aware that Gnos had turned over the envelopes to Church, and that she denied opening the envelopes or having knowledge of their contents. Furthermore, Gnos' father previously stated in an interview with authorities that Gnos had made false police reports in the past. As such, White was fully aware of Gnos' credibility issues and the circumstances surrounding the letters before his trial in this case. Again, Gnos testified at the trial, and defense counsel had the opportunity to cross-examine her about what she did with the letters and whether she opened them. However, at no time during the trial did defense counsel ask Gnos about the letters or the contents of the envelopes.

Furthermore, the court concludes that this information simply consists of impeachment evidence. In fact, White argues that he should have been able to "determine what Gnos was trying to hide" by resealing the envelopes before providing them to Church. Def.'s Mot. For New Trial 30. In the court's view, Gnos' subsequent testimony is also cumulative of the evidence

11

presented in this case. During trial, defense counsel put forth evidence that Gnos has access to White's accounts, and White testified that he had given his account information to Gnos. Therefore, any additional evidence that Gnos opened the envelopes containing White's account information would have little probative value. The jury was aware of White's defense that Gnos had sent the threatening emails to MW, as well as the evidence that Gnos had access to White's accounts at the time of those emails. To the extent that White seeks to question Gnos about what she did with the letters containing White's account information, in order to allege that a third party had access to his accounts, the court concludes that White is not entitled to a new trial so that he can employ a different defense strategy.

Most importantly, the court is not convinced that Gnos has recanted her trial testimony, or that Gnos' testimony during the trial in this case was false. During the Florida trial, it was Church who testified that the envelopes appeared unopened, and Gnos merely testified that she did not read the letters in the envelopes. Again, Gnos was not questioned in this case regarding the envelopes or the letters.

### e. **Debra Healy's Testimony**

White next argues that he is entitled to a new trial because the government's computer forensics expert, Debra Healy, provided false testimony in this case. Specifically, White believes that Healy provided an inaccurate explanation as to how Tor software works by stating that an IP address remains the same if a person is logged into multiple accounts during a single Tor session. During the Florida trial, Healy testified that an individual's IP address is constantly reassigned during a single Tor session. Therefore, White argues that the evidence showing that the same IP address was linked to both the email account, from which the threatening emails were sent, and his Facebook account did not establish that the same person was accessing both accounts.

12

For similar reasons as those explained above, the court does not believe that White has shown that he is entitled to a new trial based on Healy's subsequent testimony. Information as to the Tor software is not newly discovered evidence, as defense counsel cross-examined Healy about Tor's capabilities and hired a computer forensic expert to examine the documents in this case. In the court's view, White was in possession of everything he needed to present his defense regarding the Tor software. Most importantly, White seeks a new trial in order to impeach Healy based on her subsequent testimony. Again, impeachment is an inadequate basis for a new trial. Defense counsel had the opportunity to question Healy about her inconsistent explanation of the Tor software. See Fulcher, 250 F.3d at 250 (considering whether "more probing cross-examination would have elicited any of the facts that came to light following the trial"). In addition, Healy admitted during cross-examination that two people could have the same IP address through the use of Tor software. For that reason, the court believes that the evidence White seeks to introduce at a new trial is cumulative of the evidence that was already presented at trial. Finally, the court is not convinced that Healy's subsequent testimony would result in White's acquittal at a new trial. Again, White's defense consisted of evidence that someone else had sent the threatening messages. However, the jury found beyond a reasonable doubt that White had committed the offenses.

Furthermore, as Healy has not recanted her testimony in this case, White is not entitled to a new trial based on her allegedly perjured testimony. Despite White's arguments to the contrary, the court does not believe that the government has conceded that Healy committed perjury. Even if the court could find that Healy recanted her testimony, the court is not convinced that her testimony in this case was false. In fact, Healy used the same metaphor, which White believes is a correct description of the Tor software, during both the trial in this case and the Florida trial.

13

See Trial Tr. 243:25-224:3, Docket No. 182 ("If it were like a letter, you would send it to one person and they would take the envelope off of it, put a new envelope on it and send it to another person and keep it up."). As such, White is not entitled to a new trial on this ground.

### f. Psychological Evidence

White next argues that he is entitled to a new trial based on new information that he suffers from certain mental conditions. White provides that, in September of 2009, he had been evaluated by Dr. Conrad Daum, who concluded that White did not suffer from any mental disease or defect.[6] Between September of 2015 and January of 2016, White was evaluated by Dr. Eric Ostrov, who concluded that White suffered from post-traumatic stress disorder and dissociative episodes. White argues that this newly discovered evidence would have negated the necessary mens rea to convict him of the offenses in this case.

The court is not convinced that White has established that this information warrants a new trial. First, White has not demonstrated why he was prevented from offering evidence as to his mental state at the time of the instant offenses. Thus, the court does not believe that he has shown due diligence in obtaining this information. The majority of White's evidence in this case was meant to demonstrate that someone else had sent the threatening emails to MW. Again, White is not entitled to a new trial in order to employ a different defense strategy, namely that he could not have formed the requisite intent to be convicted of the underlying offenses. Most importantly, the court does not believe that the report constitutes material evidence, as Dr. Ostrov's determination in February of 2016 has no bearing on White's mens rea at the time the threatening emails were sent in May and June of 2012. Dr. Ostrov specifically notes that his evaluation is meant to determine White's "current mental status." Ex. H to Def.'s Mot. For New

---

[6] Dr. Daum did not conduct an evaluation for this case but, instead, completed a psychiatric evaluation of White's competency to stand trial in an unrelated case before this court.

14

Trial, Docket No. 243-2. Although the psychiatric report indicates that White has a history of borderline personality traits and traumatic events, such determination does not establish when White suffered from those conditions. Therefore, the court also is not convinced that White would be acquitted at a new trial based on this information.

### g. Connor Affidavit

To the extent that White relies on Connor's sworn affidavit as a separate ground for a new trial, the court is not persuaded. In that affidavit, Connor merely asserts that it is "possible for a device to access a Facebook account without logging in each time" and "[a] Yahoo email account may be accessed without creating a login event." Ex. D to Def.'s Mot. For New Trial ¶ 8, Docket No. 260-1. For example, Connor explains that access to these accounts through an app on a mobile device would not register as a login event. White believes that this information would support his theory that Gnos accessed his accounts on a mobile device.

For the same reasons discussed above regarding the possibility of a virus on White's computer, this information is not sufficient to warrant a new trial. Again, Connor evaluated the same documents that were available to White before trial in this case, which negates White's argument that Connor's statements constitute newly discovered evidence. The court believes that White had the opportunity to retain Connor as an expert witness and question Connor regarding the information found in his affidavit. In addition, Gnos was subject to lengthy cross-examination in this case during which defense counsel could have questioned her about her mobile devices and the mobile devices possessed by others to which she would have had access. Similarly, defense counsel had the opportunity to cross-examine Church as to his conclusion that every Facebook account login results in a recorded event.

Furthermore, the court finds that the information in Connor's affidavit is merely cumulative of the evidence presented at trial in this case. Again, White's theory was that someone else had accessed his accounts and had sent the threatening messages to MW. White put forth evidence in this case that Gnos had access to his accounts during the relevant time period and also possessed a mobile device. However, the jury rejected the argument that Gnos had sent the threatening messages to MW. Moreover, the court is not convinced that Connor's affidavit is material. Connor's assertions in his affidavit are framed in solely general terms; he does not opine that White's Facebook or Yahoo accounts had been accessed without creating a login record or through a mobile device but, instead, that such a situation was possible. In the court's view, Connor's affidavit adds little probative value to the argument that Gnos sent the threatening messages. Therefore, the court is not convinced that the introduction of Connor's hypothetical testimony would probably result in White's acquittal at a new trial.

## II.    Other Grounds

To the extent that White argues that there are other grounds that warrant granting him a new trial, the court rejects such contentions. Under Rule 33, White was required to submit his motion for new trial based on "any reason other than newly discovered evidence" within fourteen days of the jury's verdict in this case. Fed. R. Crim. P. 33. Because White's motion was filed well after this fourteen-day period, the court denies the motion based on any other ground as untimely. This includes arguments that counsel was ineffective, and that certain witnesses who testified at the trial in this case lacked personal knowledge to provide lay opinion testimony. See United States v. Smith, 62 F.3d 641, 648 (4th Cir. 1995) (finding that a motion for new trial predicated on ineffective assistance of counsel is not "evidence" and, thus, falls under Rule 33(b)(2)).

16

## Conclusion

For the foregoing reasons, White's motion for new trial will be denied, as he has not shown that he is entitled to such relief. Moreover, the interest of justice does not require a new trial, as the court does not believe that the evidence weighs heavily against the jury's verdict.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

DATED: This 27th day of June, 2016.

_____
Chief United States District Judge