CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 3 1 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:13CR00013 |
| | ) | (Civil Action No. 7:16CV80934) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WILLIAM A. WHITE, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

William A. White, a federal inmate proceeding pro se, moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government filed a motion to dismiss, and White responded. Accordingly, this matter is ripe for disposition. Upon review of the record, the court concludes that White's claims lack merit, and the government's motion to dismiss must be granted.

### I.

On February 7, 2013, a federal grand jury indicted White on four counts of making extortionate communications through interstate and foreign commerce, in violation of 18 U.S.C. § 875(b) and 2. These charges stemmed from four emails that White sent threatening injury to his ex-wife if she did not send him "alimony" payments. Indictment at 2-3, ECF No. 1. White traveled to Mexico to avoid serving a sentence in a separate pending federal case.[1] He was arrested in Mexico and extradited to the United States. Trial Trans. at 274-77, ECF No. 182.

---

[1] In 2008, a jury convicted White in the United States District Court for the Western District of Virginia before Judge Turk of witness tampering and making interstate threats with intent to injure; those charges stemmed from attempts to intimidate minority tenants from filing racial discrimination complaints against him. He was sentenced to 30 months' incarceration. On appeal, the United States Court of Appeals for the Fourth Circuit remanded for re-sentencing based on its conclusion that the district court applied an incorrect standard in determining whether to apply a vulnerable victim enhancement. United States v. White, 670 F.3d 498, 516 (4th Cir. 2012). A resentencing hearing had been set for May 11, 2012, but White fled to Mexico in May before the hearing.

In 2009, White was indicted in the United States District Court for the Northern District of Illinois for soliciting a crime of violence against a juror. After an appeal and remand, he was ultimately sentenced to 42 months' incarceration.

White proceeded to trial before Senior United States District Judge, James C. Turk.[2] The government presented testimony from White's ex-wife, who explained that she had received emails from her ex-husband's email address, dhypehn@yahoo.com, threatening her with physical harm if she did not send him $400 a month. Tr. Trans. at 45-55. ECF No. 181. The government also called experts in internet tracking to testify regarding where the emails originated, because anonymizer technology had been used to mask the Internet Protocol ("IP") addresses associated with the emails sent. Tr. Trans. at 231-50 (testimony of Debra Healy, computer forensic expert); Id. at 272-311 (testimony of David Church, FBI agent assigned to the case).

White's theory of the case was that a friend, Sabrina Gnos, had taken over his email account and sent the emails to his ex-wife to get the money herself. White testified in his own defense and admitted that he had called Gnos and asked her to find someone to intimidate his ex-wife because his ex-wife had stopped depositing money in his bank account, and he wanted her to resume payments. Tr. Trans. at 45, ECF No. 170. However, he denied sending any threatening emails to his ex-wife. Id. at 19-20. White argued that Gnos had written the emails and was trying to frame him. Id. at 20.

The jury found White guilty. Verdict at 1-2, ECF No. 163. For Counts One, Three, and Four, the jury concluded that White was guilty of threatening his ex-wife with the intent to extort money from her; for Count Two, the jury concluded he was guilty of the lesser included offense of sending a threatening email, without intent to extort. Id.

The Probation Office prepared a presentence investigation report ("PSR"), recommending a total offense level of 26, which included a two-point enhancement for

---

[2] The underlying case was originally assigned to Judge Turk. Judge Turk is now deceased, and the case has been reassigned to the undersigned district judge.

obstruction of justice for each of the four counts, a criminal history category of IV, and an advisory guideline range of 92 to 115 months' imprisonment. PSR ¶ 67, ECF No. 201. Both parties submitted sentencing memoranda to the court. White objected to the obstruction of justice enhancements and requested a downward departure or variance from his guideline range. Sent. Memo. at 2-4, ECF No. 188. The government argued that White should be sentenced as a career offender because he had the requisite number of prior convictions for crimes of violence. Sent. Memo at 7-8, ECF No. 189.

The court held a sentencing hearing on May 1, 2014. The court overruled the objections of both White and the government. It held that the obstruction of justice enhancement was appropriate because White knew "what [he] had done" but tried to make the jury believe that someone else was responsible. Sent. Hr'g Tr. at 33, ECF No. 214. In addition, the court concluded that White should not be sentenced as a career offender because at the time that he committed the acts at issue in this case, he had been acquitted of wrongdoing in a federal case, so he did not have the requisite number of prior convictions.[3] The court imposed a guideline sentence of 92 months on each of Counts One, Three, and Four and a term of 60 months on Count Two, to run concurrently but consecutive to any other sentences that he had received stemming from other convictions. Judgment at 3, ECF No. 199.

White appealed his conviction and sentence on multiple grounds, including that the evidence was insufficient to support the verdict and the obstruction of justice enhancement was unwarranted, among others. United States v. White, 810 F.3d 212, 219-32 (4th Cir. 2016). The

---

[3] A jury found White guilty in the United States District Court for the Northern District of Illinois of soliciting a crime of violence against a juror. The district court, however, entered a judgment of acquittal. On appeal, the Seventh Circuit reinstated White's conviction. United States v. White, 698 F.3d 1005, 1020 (7th Cir. 2012). However, because the Seventh Circuit issued its decision after the criminal conduct in the instant case, the court held that the prior conviction did not qualify for U.S.S.G. § 4B1.2(c) purposes. Sent. Hr'g Tr. at 33, ECF No. 214.

United States Court of Appeals for the Fourth Circuit affirmed his conviction and sentence. Id. at 232.

White filed an amended § 2255 motion, raising 13 categories of complaints, which include multiple sub-claims for relief. Each category will be addressed in turn.

## II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). White bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### A. Ineffective Assistance of Counsel Claims

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to establish a viable ineffective assistance claim, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669. When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." Id.

To satisfy the prejudice prong of <u>Strickland</u>, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. <u>Id</u>. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> White's claims of ineffective assistance of counsel do not satisfy <u>Strickland</u>'s stringent requirements.

### 1. Failing to Present Computer Forensic Evidence (White Claims 1, 2 & 5)

White argues that he received ineffective assistance because counsel failed to investigate and present to the jury evidence that his Facebook account and email account had been used by others. Although counsel's strategy at trial was that Gnos had used White's email account to send the emails and not White, White argues that counsel should have presented more technical data to the jury regarding the use of his Facebook and email accounts and the use of anonymizer technology. § 2255 Mot. at 15-23, ECF No. 300. This claim is unavailing.

Although White agrees that his counsel's trial strategy of arguing that Gnos sent the threatening emails was "correct," he contends that counsel's presentation of the evidence was wholly lacking. § 2255 Mot. at 57, ECF No. 300. However, White admits that counsel hired a computer expert to review the discovery. <u>Id.</u> at 12, Order at 2, ECF No. 75 (granting defense motion for expert). However, counsel decided not to have the expert testify and White presented no evidence that the expert uncovered any exculpatory evidence that should have been presented at trial. Instead, counsel cross-examined the government's witnesses at trial to cast doubt on who authored and sent the emails and had White testify in his own defense. Counsel cross-examined Gnos to try to elicit testimony that she had used White's email accounts, although Gnos denied it. Tr. Trans. at 174, ECF No. 182. In addition, counsel cross-examined the government's witness who testified regarding the use of anonymizer technology, and questioned

why White would use technology to hide his identity and then sign the emails with his name. Tr. Trans. at 18-19, ECF No. 235.

Courts must review defense counsel's decisions regarding the investigation of a case "with an eye for 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Bunch v. Thompson, 949 F.2d 1354, 1363 (4th Cir. 1991) (quoting Strickland, 466 U.S. at 691). The court concludes that counsel's decision to focus on rebutting the government's evidence and not to present evidence from the computer expert was a tactical one. See Sexton v. French, 163 F.3d 874, 887 (4th Cir.1998) ("The decision concerning what evidence should be introduced [in criminal trial proceedings] is best left in the hands of trial counsel, and reasonable tactical decisions by trial counsel in this regard are binding on the defendant.").

Moreover, although White takes issue with the government's evidence, claiming that it is insufficient to convict him, the jury and the Fourth Circuit found otherwise. Accordingly, the court concludes that counsel exercised professional judgment in representing White, counsel's trial decisions were guided by a "sound strategic motive," and counsel's representation did not fall below an objective standard of reasonableness. Yarborough v. Gentry, 540 U.S. 1, 8 (2003).

### 2. Failure to Raise Authentication of Emails Concerns (White Claim 4)

White argues that counsel provided ineffective assistance for failing to challenge the authentication of the threatening emails that constituted the basis for his conviction. The Facebook and Yahoo! email records admitted at trial were obtained pursuant to a search warrant and the government submitted a notice regarding their authenticity as records of regularly conducted business activity pursuant to Rule 902(11) of the Federal Rules of Evidence. Notices,

ECF No. 99, 101. White is not arguing that the records from Facebook and Yahoo! were provided in error or came from some other email address or Facebook account.

Instead, White's authentication argument is essentially the same argument that he made at trial, on appeal, and in his current § 2255 petition—that he did not author the emails or Facebook posts and that the government failed to prove that he did. Counsel attempted to cast doubt on whether White authored the emails by cross-examining witnesses and argued in closing that "he didn't send them." Tr. Trans. at 20, ECF No. 235. The jury heard the evidence and concluded that White was responsible, and the Fourth Circuit affirmed that the evidence was sufficient to convict. Accordingly, his counsel did not provide deficient performance by failing to do more to challenge the authenticity of the emails or to request a jury instruction regarding authentication. Strickland, 466 U.S. at 687.

### 3. Failure to Challenge Government's Attempts to Frame White (White Claim 6)

White argues that counsel provided ineffective assistance because he did not challenge the fact that White had been "the target of an FBI-JTTF counterintelligence operation" and that the government has stolen his identity in order to commit crimes and frame him. § 2255 Mot. at 65, 69, ECF No. 300. White has faced numerous federal charges and has been investigated for each one. However, his claims that the Federal Bureau of Investigation ("FBI") targeted him, framed him because of his beliefs, and prevented witnesses from testifying in his defense are "palpably incredible." Blackledge v. Allison, 431 U.S. 63, 76 (1977). He provides no proof, other than his personal observations and assessments of various internet sites, letters he claims were sent to people by the government but in his name, and statements by unnamed witnesses. Because these claims are "patently frivolous or false," counsel was not remiss for failing to investigate them. Id.; Strickland, 466 U.S. at 687.

### 4. Interfering with Right To Testify (White Claim 8)

White argues that he received ineffective assistance of counsel because counsel failed to properly prepare for White's testimony at trial, thereby violating his Fifth Amendment rights. Defense counsel did, in fact, call White to testify and questioned him extensively. Tr. Trans. at 3-31, 64-65, ECF No. 170. White does not explain what he would have said that he did not have an opportunity to say, had counsel been better prepared. Accordingly, White cannot show that counsel's representation fell below an objective standard of reasonableness or that he suffered any prejudice. Strickland, 466 U.S. at 687.

### 5. Failure to Investigate Mental Health (White Claim 9)

White argues that counsel failed to investigate and present evidence that he was "subjected to torture" on three occasions while in federal custody, suffers from post-traumatic stress disorder, and accordingly lacked the mens rea to commit the crimes for which he was convicted. White argues that counsel should have hired a psychologist to evaluate him so that these claims could have been developed.

White's argument is unavailing. White's theory, throughout the trial, was that he did not write the threatening emails. He continues to argue: "I did not commit the actus rea of these crimes," even as he asserts that he "was also unable to formulate mens rea during the period of time when crimes were committed." § 2255 Mot. at 120, ECF No. 300. Because White has never admitted to writing the emails, he cannot successfully claim that his mental state during the time that the emails were written and sent was relevant. As such, White cannot establish that counsel erred by failing to make an argument that ran counter to the expressed and agreed upon trial strategy. Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010); see also United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999) (noting that "[a]n attorney's failure to raise a meritless

argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"). White has not established that counsel performed in a deficient manner by failing to hire a psychologist or that he suffered prejudice from the lack of such an expert. <u>Strickland</u>, 466 U.S. at 687.

White also argues that counsel was ineffective at sentencing for failing to argue that he suffered post-traumatic stress as a mitigating factor and that he did not have the mens rea to support his obstruction of justice enhancement. A downward departure may be warranted if a defendant can show that he committed the offense "while suffering from a significantly reduced mental capacity" which "contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. In order to establish that the defendant suffered from a "significantly reduced mental capacity" he must show that he was "unable to process information or to reason." <u>United States v. Goossens</u>, 84 F.3d 697, 701 (4th Cir. 1996). White has produced no evidence to suggest that he could not process information or reason when he sent the threatening emails. In fact, it appears that White displayed considerable mental agility in fleeing to Mexico and attempting to obtain money from his ex-wife so that he could continue to live there. Moreover, although White argues that he "has no memory of committing the crimes," and believes that his testimony was truthful, and thus that he should not have been subjected to an obstruction of justice enhancement at sentencing, he presented no evidence that this type of dissociation occurred. His counsel, however, objected to the obstruction of justice enhancement, arguing that "Bill White believes from the bottom of his heart that he didn't send these emails in question." Sent. Hr'g Tr. at 21, ECF No. 214. However, the court rejected defense counsel's argument and the Fourth Circuit affirmed. <u>White</u>, 810 F.3d at 230. Therefore this claim is without merit. <u>United States v.</u>

Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that claims "already addressed and rejected on direct appeal," cannot be relitigated in a § 2255 motion absent a change in the law warranting reconsideration).

### 6. Failure to Object to the Non-Grouping of Charges (White Claim 10)

White argues that counsel was ineffective for failing to argue at sentencing that the court should have grouped his four separate counts of conviction under U.S.S.G. § 3D1.2. Section 3D1.2 provides that "all counts involving substantially the same harm shall be grouped together into a single Group." The Guideline specifies that counts involving substantially the same harm include "(a) when counts involve the same victim and the same act or transaction," and "(b) when counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(a) & (b).

Defense counsel raised this issue in its reply brief to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit concluded that the district court had not erred, under a plain error review, because each of White's threats against his ex-wife involved "separate instances of fear and risk of harm," allowing for four separate offenses. White, 810 F.3d at 232. White argues, however, that grouping was appropriate and had counsel raised the issue before the sentencing court, the Fourth Circuit, unconstrained by plain error review, would have reversed. This claim is unavailing.

The Fourth Circuit explained that because White induced separate instances of fear, grouping was not required. But even if the sentencing court erred by counting each of White's convictions separately, for sentencing purposes, he cannot establish that he is entitled to relief on collateral review. In order to obtain relief, White must show that the sentencing error was

constitutional, jurisdictional, or resulted in a complete miscarriage of justice. United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015). A district court's erroneous guideline calculation under the advisory guideline regime generally does not rise to the level of reversible error when the defendant is sentenced within the statutory limits. Id. at 943. In this case, White faced a statutory maximum sentence of 20 years under 18 U.S.C. § 875(b) and a statutory maximum of five years under 18 U.S.C. § 875(c). He was sentenced to 92 months' incarceration on the § 875(b) convictions and 60 months' incarceration on the § 875(c) conviction. Because he was sentenced within the statutory limits, any potential error in the application of the sentencing guidelines "did not affect the lawfulness of the sentence itself—then or now." Id. (internal quotation marks omitted). Accordingly, counsel did not err by failing to raise the grouping argument at sentencing. Strickland, 466 U.S. at 687.

### B. Actual Innocence/ Sufficiency of Evidence Claims (White Claims 1 & 13)

White argues that he is actually innocent of the charges on which a jury found him guilty. § 2255 Mot. at 14, ECF No. 300. He claims that Gnos sent the emails to his ex-wife and that he had nothing to do with it. This claim is related to his assertion that the evidence was insufficient to convict him—including that Gnos and law enforcement officers provided false testimony and that the government was conspiring against him. Id. at 134-147 (Claim 13). These claims lack merit.

White's theory at trial was that he was actually innocent because Gnos sent the threatening emails. The jury heard all of the evidence, weighed it, and concluded that White was, in fact, guilty. A jury verdict may not be disturbed when there is "substantial evidence in the record to support it." United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007). White has not pointed to any new, previously undiscovered evidence establishing his actual innocence. See

Schlup v. Delo, 513 U.S. 290, 316-17 (1995) (noting that a petitioner claiming actual innocence on collateral review must show that newly discovered evidence "unquestionably establishes [his] innocence" and that a fundamental "miscarriage of justice" would result if relief were not granted).

White argued on direct appeal that the evidence presented was insufficient to support his conviction. However, upon review, the Fourth Circuit concluded that "a rational trier of fact could easily have found that [White] sent [his ex-wife] true threats of bodily harm through foreign commerce with the intent to extort." White, 810 F.3d at 228. Because the Fourth Circuit has already decided that the evidence at trial supported White's conviction, he cannot successfully challenge the sufficiency of the evidence on collateral review. See Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (concluding that claims that were "already addressed and rejected on direct appeal," cannot be relitigated absent extraordinary circumstances).

### C. Prosecutorial Misconduct

White makes many claims of prosecutorial misconduct. All of those claims are unavailing.

#### 1. False Testimony and Falsified Documents (White Claims 3, 4 & 13)

White argues that the government deliberately presented false testimony from numerous witnesses, including Gnos and law enforcement officials, and provided the court with falsified documents. § 2255 Mot. at 46-47, ECF No. 300 (deliberately presenting false Gnos testimony); 53-54 (false email headers). These claims are procedurally defaulted as White did not raise them below. United States v. Mikalajunas, 186 F.3d 490, 492 (4th Cir. 1999) (noting that an issue may not be raised for the first time on collateral review, unless the defendant can show cause for

the procedural default and actual prejudice, or can "demonstrate that a miscarriage of justice would result from refusal of the court to entertain a collateral attack").

These claims also fail on the merits. In order for a defendant to succeed on a claim of prosecutorial misconduct based on false testimony or falsified documents, he must first establish that the testimony or documents presented were, in fact, false and second, that the government knowingly used the perjured testimony and falsified documents in order to secure a conviction. Napue v. Illinois, 360 U.S. 264, 269 (1959); Boyd v. French, 147 F.3d 319, 329-30 (4th Cir. 1998). In addition, use of such false testimony or documents must have "affected the judgment of the jury." Boyd, 147 F.3d at 330.

White cannot establish either that the testimony presented was perjured or that the government knowingly presented false evidence. He claims that Gnos fabricated stories against him and that there was not "a single thing that Gnos testified at trial that is not shown to be false," but he does not present objective evidence to support this claim. § 2255 Mot. at 143, ECF No. 300. Moreover, "inconsistencies in the testimony by government witnesses do not establish the government's knowing use of false testimony." United States v. Griley, 814 F.2d 967, 970-71 (1987). Gnos testified at trial, and White's counsel cross-examined her to try and underscore inconsistencies in her statements, so White has had an opportunity to challenge the testimony presented. Tr. Trans. at 152-93, ECF No. 182.

White also claims that the government presented false testimony from various law enforcement officers related to the case, including FBI Special Agent David Church, who testified regarding his investigation of White and FBI Task Force Officer Debra Healy, who testified regarding the digital forensic evidence linking White to the email address from which the threatening emails were sent. Essentially, White takes issue with their testimony regarding

the IP address evidence and anonymizer technology based on his own personal knowledge and assessment of the evidence. He does not, however, provide objective proof that the witnesses provided perjured testimony with the knowledge and consent of the government. Moreover, these officers testified at trial and counsel was able to cross-examine them, providing counsel with an opportunity to ferret out inconsistencies in their statements. White has presented no evidence that would support a prosecutorial misconduct claim.

In addition, White argues that the government concealed evidence that a "'backdoor Trojan' virus" existed in his email account that would have allowed someone else to take control of the account, altered documents admitted into evidence, and falsified documents, including the headers of the four threatening emails that were the basis of his conviction. § 2255 Mot. at 24-48, ECF No. 300. White cannot substantiate these claims. White argues that he discovered the documents had been altered because of his personal knowledge regarding the sending of emails, the use of Facebook accounts, and the internet generally. Without more, White cannot establish the first requirement for a prosecutorial misconduct claim, that the evidence presented was, in fact, false. United States v. Basham, 789 F.3d 358, 378 (4th Cir. 2015). Accordingly, his claims are without merit. Because he has not established that prosecutorial misconduct occurred, he also cannot establish that counsel was ineffective for failing to raise these claims during his trial. Strickland, 466 U.S. at 687.

2. Selective Prosecution (White Claim 11)

White also argues that the government engaged in selective prosecution by bringing the indictment against him. § 2255 Mot. at 127-29, ECF No. 300. Specifically, he claims that he was targeted because of his belief that the federal government is corrupt and other unpopular views.

White raised a similar claim before the Fourth Circuit, arguing that he had been targeted for prosecution because of his political beliefs. White, 810 F.3d at 230-31. The Fourth Circuit rejected his claim and, accordingly, White cannot raise it on collateral review. Id.; see also Roane, 378 F.3d at 396 n. 7 (claims already addressed and rejected on direct appeal cannot be relitigated).

Moreover, this claim fails on the merits. The Due Process Clause does not allow the government to prosecute a criminal case based on an "unjustifiable" factor, such as race, religion, or the exercise of a constitutional right. United States v. Armstrong, 571 U.S. 456, 464 (1996). However, absent a clear and substantial showing of such impermissible conduct, the government's decision to prosecute is presumed to be motivated by proper considerations. Id.; see also United States v. Hastings, 126 F.3d 310, 313 (4th Cir. 1997) (noting that "[a] criminal defendant bears a heavy burden in proving that he has been selected for prosecution in contravention of his constitutional rights"). "The Attorney General and the United States Attorneys retain broad discretion to enforce the Nation's criminal laws." Armstrong, 571 U.S. at 464 (internal quotation marks omitted).

Although at White's sentencing, the court intimated that the government might have been trying to punish White for his beliefs, the government asserts that it prosecuted White in federal court because he is a career criminal. Gov't Resp. at 22, ECF No. 326. The Fourth Circuit considered the district court's statements but ultimately concluded that it had not erred. White, 810 F.3d at 230-31. Accordingly, White has not established that the government acted in contravention of his constitutional rights.

### D. Fourth Amendment Error (White Claim 6f)

White argues that the government accessed his email and Facebook accounts without a warrant, in violation of the Fourth Amendment. § 2255 Mot. at 99, ECF No. 30. This claim is procedurally defaulted, as he did not raise the issue below and has not provided good cause for the delay. Mikalajunas, 186 F.3d at 492. Moreover, it fails on the merits. White presented no evidence to substantiate his claim. The government filed Rule 902(11) notices with the court to authenticate the records it received from Facebook and Yahoo! and the court record indicates that the documents were received pursuant to search warrants. Tokalenko Decl. ¶ 1, ECF No. 99-1, Morton Decl. ¶ 1, ECF No. 99-1, Mifsud Decl. ¶ 2, ECF No. 101-1. Accordingly, this claim must be dismissed.

### E. Recusal (White Claim 7)

Next, White argues that he is entitled to relief because Judge Turk should have been recused from presiding over his trial as Judge Turk had presided over White's previous trial in the United States District Court for the Western District of Virginia, in which a jury found White guilty of witness tampering and making interstate threats with intent to injure. United States v. White, No. 7:09-cr-00054. There was some evidence that White had sent Judge Turk threatening communications in the time between his 2009 conviction and his 2013 trial underlying this § 2255 motion. Prior to the 2013 trial, the government requested a hearing on the recusal issue, although it represented that it did not plan on introducing any evidence of the threatening communications to Judge Turk at trial and, in fact, it did not present any such evidence. Hr'g Trans. at 13-14, ECF No. 231. At the hearing, when asked whether he was requesting that Judge Turk recuse himself, White said, "No, I'm not asking for recusal." Id. at 14. "[A] defendant's solemn declarations in open court . . . 'carry a strong presumption of verity.'" United States v.

White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74). White affirmed that he did not want Judge Turk to recuse himself. Moreover, there were no grounds necessitating recusal. See generally, 28 U.S.C. § 455 (providing for the circumstances under which a judge must disqualify himself). Accordingly, White cannot now successfully claim that Judge Turk should have recused himself.[4]

### F. Court Error (White Claim 7)

White argues that the court "wanted [him] convicted" and made numerous improper rulings. § 2255 Mot. at 103, ECF No. 300. These claims are procedurally defaulted as they were not raised below. Mikalajunas, 186 F.3d at 492. But they are also without merit. White claims that the court incorrectly instructed the jury with regard to the unanimity requirement for a verdict. The court instructed the jury that a "unanimous verdict is required as to each count of the indictment before you can return a verdict as to that count." Tr. Trans. at 3, ECF No. 220. Before deliberations, a juror asked for clarification: "If [the jury] is not unanimous, then [the verdict would be] not guilty?" The court explained, "No. No. No. You can't return a verdict until all of you agree." Tr. Trans. at 376, ECF No. 183. The court's statement was not erroneous. A court need not "instruct the jury as to the consequences of deadlock" but must instruct that a guilty verdict requires unanimity. Jones v. United States, 527 U.S. 373, 381 (1999).

White also argues that the court impermissibly "halted proceedings" and denied him the right to cross-examine Gnos. This claim is based on a bench conference, requested by the

---

[4] To the extent that White argues that Judge Turk should have recused himself because White faced charges in federal court in Florida after he was found guilty in the trial underlying this § 2255 motion, this claim is wholly without merit. White was indicted in Florida after the jury returned a verdict in this case. Although 28 U.S.C. § 455(b)(5)(iv) requires recusal if a judge will likely "be a material witness in the proceeding," Judge Turk was not a witness at all in the Virginia case. He was also not likely to be a "material witness" in the Florida case, and certainly, he did not know at the time of the Virginia trial whether he would be called as a witness in a separate criminal proceeding that had not yet been initiated. In fact, Judge Turk never testified in the Florida case.

government, that took place off the record during defense counsel's cross-examination of Gnos. White argues that but for the bench conference, Gnos would have confessed that she wrote the threatening emails. This claim has no merit as defense counsel vigorously cross-examined Gnos both before and after the bench conference and there is no indication that the bench conference affected her testimony.

In addition, White argues that the court impermissibly "bolstered" a government witness's testimony that the witness had informed reporters that White had been arrested after he was apprehended in Mexico. The court questioned whether the witness was "vouching for the authenticity" of the time of the arrest mentioned in the newspaper article and the witness responded, "I had no direct knowledge of when [White] was arrested." Tr. Trans. at 361, ECF No. 183. This exchange was not impermissible in any way. Accordingly, White's argument that the court somehow reinforced this witness's testimony is also meritless.

### G. **Prior Convictions and Criminal History Score (White Claim 10)**

White argues that he is entitled to relief because his two 2008 federal convictions for making interstate threats with intent to injure, pursuant to 18 U.S.C. § 875(c), can no longer count toward his criminal history score. White received a total criminal history score of eight, three points of which came from his 2008 convictions for two counts of making interstate threats with intent to injure, and one count of tampering with a witness, pursuant to 18 U.S.C. § 1512. PSR ¶ 52.

In 2015, in Elonis v. United States, 135 S. Ct. 2001, 2012 (2015), the Supreme Court concluded that in order for a conviction for making interstate threats to stand, the government must prove that the defendant had a mental state in which he acted "for the purpose of issuing a

threat, or with knowledge that the communication [would] be viewed as a threat." It was not necessary for the government to prove this mens rea requirement at White's 2008 trial.

Whether or not <u>Elonis</u> applies retroactively and would affect White's § 875(c) convictions is immaterial, however, because along with those convictions, he was also convicted of tampering with a witness, pursuant to 18 U.S.C. § 1512. He received sentences of 33 months' incarceration for each conviction, to be served concurrently. The PSR recommended a three-point increase to his criminal history score for all three convictions because they were charged in the same indictment. <u>See</u> U.S.S.G. § 4A1.2 (providing that if "sentences resulted from offenses contained in the same charging instrument" then they are counted as a single sentence for criminal-history-calculation purposes). However, had White been convicted only of the § 1512 charge, the PSR would have recommended the same three criminal history points because he received a sentence in excess of one year and one month for that conviction. <u>See</u> U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month.").

Accordingly, White cannot establish that his criminal history computation and resulting advisory guideline range would be any different even without his § 875(c) convictions. As such, he cannot establish that his sentence was imposed in violation of federal law or the Constitution.

## H. Tenth Amendment Error (White Claim 12)

Finally, White argues that the court did not have jurisdiction to hear the case under the Tenth Amendment of the Constitution because it should have been brought in state court rather than federal court. This claim is procedurally barred, <u>Mikalajunas</u>, 186 F.3d at 492, but also unavailing on the merits.

The Tenth Amendment reserves to the states the powers not specifically delegated to the federal government. U.S. Const. amend. X. White relies on a recent Supreme Court case, Bond v. United States, 134 S. Ct. 2077, 2089 (2014), to argue that the charges against him should have been prosecuted in state court as a domestic dispute. In Bond, the Supreme Court held that the Chemical Weapons Convention Implementation Act ("CWCIA"), intended to criminalize chemical weapons warfare, did not apply to a crime of simple assault where the defendant used a toxic chemical to attempt to injure her husband's mistress. Id. at 2093. The Supreme Court concluded that the defendant's actions could not be prosecuted under the CWCIA because it was "a purely local crime" that should be prosecuted in state court. Id. at 2087.

White was charged in federal court with transmitting extortionate threats in interstate commerce, in violation of 18 U.S.C. § 875(b). Unlike the CWCIA, a version of the federal extortion statute has been codified since 1934, has been routinely prosecuted since that time, and relies on Congress' enumerated power to regulate interstate commerce. United States v. Heller, 579 F.3d 990, 995 (6th Cir. 1978) (discussing the legislative history of 18 U.S.C. § 875). The federal government has the power to regulate crime affecting interstate commerce, whether or not that crime could be brought in state court. United States v. Lopez, 514 U.S. 549, 558 (1995). Accordingly, White has not established that the federal government lacked jurisdiction to bring the charges against him. Therefore, White's claim that counsel was ineffective for failing to raise a Tenth Amendment argument, which has no basis in law, also fails. Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010) (concluding that counsel's failure to raise a futile argument did not constitute ineffective assistance of counsel); see also United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999) (noting that "[a]n attorney's failure to raise a meritless argument . . . cannot form

the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

## III.

White has filed numerous motions accompanying his § 2255 motion, in the underlying criminal case, or both. All of these motions will be denied except for the motion to unseal, ECF No. 318, and the motion to withdraw, ECF No. 325.

(1) White filed a motion to modify discovery order and to depose Assistant United States Attorney ("AUSA") Patrick Hogeboom and to appoint counsel. ECF No. 310. Because the court finds unavailing White's claims of prosecutorial misconduct, there is no need to appoint counsel and depose AUSA Hogeboom. The motion is denied.

(2) White filed a motion to set aside Touhy letter pursuant to 5 U.S.C. § 701-06. ECF No. 314. He attached a letter sent to him from the United States Attorney for the Western District of Virginia, in response to his motion to depose AUSA Hogeboom (ECF No. 310), noting that AUSA Hogeboom had been directed to respectfully decline to testify. Letter at 1, ECF No. 314-1. This letter was not filed with the court and so the court has no power to "set [it] aside." Moreover, as the court has concluded that White's claims of prosecutorial misconduct have no merit, a deposition to address those issues is unnecessary and the letter is immaterial to resolution of the case. The motion is denied.

(3) White filed a motion to seal a letter to him from "Jason's Mom," which purports to discuss a man named Jason's ties to the FBI. ECF No. 317. This letter appears to have nothing to do with White and includes no personal information, not even Jason's last name. ECF No. 317-1. A district court may restrict access to judicial records

only on the basis of a narrowly tailored and compelling governmental interest. <u>Va.</u> <u>Dep't of State Police v. Washington Post</u>, 386 F.3d 567, 575 (4th Cir. 2004). White has not provided any justification for sealing this letter. This motion is denied.

(4) White filed a motion to compel discovery because some of the documents in this case were filed under seal. ECF No. 319. However, White does not claim that he did not receive the sealed documents during the pendency of his trial. Because he had access to all discovery and motions through counsel at the time of his underlying case, this motion is denied.

(5) White filed a motion to compel the United States to serve on him its motion for extension of time and any subsequent proceedings in this case. ECF No. 323. White then filed a motion to withdraw this prior motion, ECF No. 325, acknowledging that it was moot after the court granted the government's motion for extension of time and that he received a copy of the government's motion after the court order. Accordingly, his motion to compel is denied as moot and his motion to withdraw is granted.

(6) White filed five motions to expand the record. ECF No. 332, 334, 334-1, 335, & 336. The court has reviewed all of White's filings accompanying his § 2255 motion, including exhibits A-V. In a prior order, the court admonished White that it would not allow him to supplement his already-stated claims in a "piecemeal" fashion through continuous filings. Order at 2, ECF No. 290. Accordingly, these motions are denied.

(7) White filed a motion and second motion for discovery asking the court to issue numerous subpoenas duces tecum on various federal agencies, police departments,

and public interest organizations for a broad range of documents. ECF No. 333, 337. Because the court has denied White's § 2255 motion, there is no need to pursue additional discovery in this case and these motions are denied.

(8) White filed a motion to unseal discovery in this matter. ECF No. 318. The filings that were sealed were done so, by order of court, with good cause. (ECF Nos. 9, 13, 17, 45, 121, 230). Pursuant to Local Rule 9(d)(5), documents in a case "will be unsealed 120 days from the date of entry of the sealing order, unless the sealing order provides otherwise). The sealing orders in this case are not time-limited. Accordingly, the court will grant White's motion. The documents in this case will be unsealed and the documents that are restricted to the parties will be similarly unrestricted.

## IV.

For the reasons stated, the court will grant the government's motion to dismiss. An appropriate order will be entered this day.

**ENTER:**     This 31st day of May, 2017.

Chief United States District Judge