**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **CASE NO. 7:13CR00013** |
| ) | **(CASE NO. 7:16CV80934)** |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| **WILLIAM ALEXANDER WHITE,** ) | By: Hon. Glen E. Conrad |
| ) | Senior United States District Judge |
| **Defendant.** ) | |

The defendant in this closed case, William A. White, proceeding pro se, has filed a motion seeking to reopen proceedings on his initial motion to vacate, set aside or correct the sentence under 28 U.S.C. § 2255, ECF Nos. 340-41. He frames his challenge as arising under Rule 60(b) of the Federal Rules of Civil Procedure. He has also moved for leave to file an amended version of the motion and seeks to have sanctions imposed on the prosecution for alleged fraud during the § 2255 proceedings. After consideration of the record, while allowing the amendment, the court concludes that White's motions must be denied as without merit.

In addressing White's initial § 2255 motion, the court summarized the evidence presented at White's trial.

> On February 7, 2013, a federal grand jury indicted White on four counts of making extortionate communications through interstate and foreign commerce, in violation of 18 U.S.C. § 875(b) and 2. These charges stemmed from four emails that White sent threatening injury to his ex-wife if she did not send him "alimony" payments. Indictment at 2-3, ECF No. 1. White traveled to Mexico to avoid serving a sentence in a separate pending federal case. He was arrested in Mexico and extradited to the United States. Trial Trans. at 274-77, ECF No. 182.
>   White proceeded to trial before Senior United States District Judge, James C. Turk. The government presented testimony from White's ex-wife, who explained that she had received emails from her ex-husband's email address, dhypehn@yahoo.com, threatening her with physical harm if she did not send him $400 a month. Tr. Trans. at 45-55. ECF No. 181. The government also called experts in internet tracking to testify regarding where the emails originated, because anonymizer technology had been used to mask the Internet Protocol ("IP") addresses associated with the emails sent. Tr. Trans. at 231-50 (testimony of Debra

> Healy, computer forensic expert); Id. at 272-311 (testimony of David Church, FBI agent assigned to the case).
>
> White's theory of the case was that a friend, Sabrina Gnos, had taken over his email account and sent the emails to his ex-wife to get the money herself. White testified in his own defense and admitted that he had called Gnos and asked her to find someone to intimidate his ex-wife because his ex-wife had stopped depositing money in his bank account, and he wanted her to resume payments. Tr. Trans. at 45, ECF No. 170. However, he denied sending any threatening emails to his ex-wife. Id. at 19-20. White argued that Gnos had written the emails and was trying to frame him. Id. at 20.
>
> The jury found White guilty. Verdict at 1-2, ECF No. 163.

United States v. White, No. 7:13CR00013, 2017 WL 2378018, at *1–2 (W.D. Va. May 31, 2017), aff'd, 708 F. App'x 130 (4th Cir. 2018) (footnotes omitted). The court sentenced White to three prison terms of 92 months and one term of 60 months, to run concurrently to each other, but consecutive to any other sentences. The judgment was affirmed. See United States v. White, 810 F.3d 212, 219-32 (4th Cir. 2016).

White then filed his initial § 2255 motion, raising numerous claims of ineffective assistance of counsel, actual innocence claims alleging insufficient evidence, prosecutorial misconduct claims, Fourth Amendment claims, and various court error claims. The court concluded that White's claims lacked merit and granted the government's motion to dismiss. United States v. White, No. 7:13CV00013/7:16CV80934, 2017 WL 2378018 (W.D. Va. May 31, 2017), aff'd, 708 F. App'x 130 (4th Cir. 2018). White's later motions to amend and obtain reconsideration of this disposition, as well as his habeas appeal, were unsuccessful and do not warrant a detailed description here.

Eighteen months after the court denied his § 2255 motion, White filed his current motion to alter or amend judgment under Rule 60(b). He argues that the court should reopen the § 2255

2

proceedings because they were allegedly tainted by fraud.[1] The court has carefully reviewed the hundreds of pages of documents that White has submitted in support of his Rule 60(b) motion—the original and the amended versions, ECF Nos. 387 and 392. In so doing, the court finds no need to require a response from the government before denying White's motions.

II.

A federal prisoner only has one opportunity to challenge his conviction or sentence under § 2255, absent extraordinary circumstances, and a second or successive § 2255 motion, regardless of its title, must be dismissed as successive. See 28 U.S.C. § 2255(f) and (h). Thus, when a defendant seeks Rule 60 relief from the court's judgment denying his § 2255 motion, he must demonstrate "some defect in the integrity of the . . . habeas proceedings" to justify revisiting the § 2255 judgment, such as an erroneous finding of procedural default or a statute of limitations bar. Gonzalez v. Crosby, 545 U.S. 524, 532 (2005). On the other hand, a motion bringing new habeas claims or new evidence to undermine the validity of the conviction must be denied as a Rule 60 motion and should be construed and dismissed as a successive § 2255 motion. Id. at 531.

Rule 60(b) provides:

---

[1] White asserts that his exhibits include internal Federal Bureau of Investigation ("FBI") documents referring to the "National Initiative Targeting Bill White" as an FBI "Major Case," and ongoing operations conducted by the FBI's Counterterrorism Division ("CTD") and Domestic Terrorism Strategic Operations Section ("DTSOS"), the Department of Justice ("DOJ") and its Civil Rights Division ("CRD"), and other federal agencies. Am. Mot. 3, ECF No. 392. White contends that his exhibits show how "the DOJ knowingly, and, maliciously, charged [White] with crimes that [he] did not commit in each of [his] four federal proceedings, and, has attempted to frame [him] for other crimes." Id. at 4. He also asserts that "beginning in 2008, a group of FBI Special Agents ("SAs"), and, DOJ Assistant US Attorneys ("AUSAs"), set up an elaborate document laundering operation to conceal the scope of the National Initiative Targeting Bill White, and, to obstruct justice in [his] federal prosecutions, and, this concealment is ongoing." Id. White claims that the Federal Bureau of Prisons ("BOP") "destroyed records, engaged in medical malpractice, and, denied [him] access to an independent medical examination, in order to conceal the fact that [he] was tortured, seriously injured, and, mentally incompetent at the time that the crimes charged in this matter occurred." Id. White contends that "the US Marshals Service, the US Attorney's Office, and other agencies are also continuing to conceal documents related to this matter" and that "the United States committed fraud upon this habeas court." Id. White's claims in this motion, like many of the claims raised in the § 2255 proceeding itself, are primarily based on his speculative interpretations of, and conclusory assertions about, the documents he submits. Furthermore, for reasons herein stated, he is not entitled to the extraordinary relief he seeks under Rule 60(b).

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment omitted that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The remedy available under any aspect of Rule 60(b) "is extraordinary and is only to be invoked upon a showing of exceptional circumstances." United States v. Welsh, 879 F.3d 530, 536 (4th Cir. 2018), cert. denied, 139 S. Ct. 1168 (2019).[2]

As threshold issues, a movant seeking relief under Rule 60(b) must first demonstrate that the motion is timely, that he has a meritorious claim or defense, and that the opposing party will not suffer unfair prejudice by having the judgment set aside. See Robinson v. Wix Filtration Corp., 599 F.3d 403, 412 n. 12 (4th Cir. 2010); Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993); Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1988) (per curiam). Only if the movant meets these three threshold conditions will the court determine whether the movant has satisfied "one of the six enumerated grounds for relief under Rule 60(b)." Nat'l Credit Union Admin. Bd., 1 F.3d at 266.

---

[2] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this memorandum opinion, unless otherwise noted.

White argues that the government made fraudulent or inaccurate representations in its § 2255 brief that misled the court into denying relief. He attempts to prove this alleged fraud with documentation subsequently obtained through requests under the Freedom of Information Act ("FOIA") and various legal maneuverings in other courts and cases. According to White, court records and his evidence show four types or incidents of fraud that the government waged upon the court in its legal brief, filed during the § 2255 proceedings, concerning: (1) federal law enforcement's targeting of White as a white supremacist; (2) destruction of documents regarding White's allegations of being tortured in federal prison; (3) selective prosecution of White as an innocent man; and (4) a statement that White threatened to injure his Black tenants. As relief, White asks the court to reinstate this § 2255 case to the active docket to allow consideration of his purported fraud claims. Given this argument, the court will address his motion as amended under Rule 60 rather than construing and dismissing it as a successive § 2255 motion.

White asserts his fraud claims under 60(b)(2), (3), and (6). Rule 60(c) provides that "[a] motion under Rule 60(b) must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." White's claims under Rule 60(b)(2) and (3) were not timely filed, because he submitted them more than one year after the court denied the initial § 2255 motion that he is trying to reinstate. Because his invocation of Rule 60(b)(6) rests on the same new evidence and fraud assertions as his arguments for relief under subsections (2) and (3), the court finds that it, too, was not timely filed. Based on the time White has taken to accumulate his stack of documents, which he blames on alleged intransigence by various federal agencies, he insists that the court should equitably toll the one-year time limit for Rule 60(b) motions. The court does not find these alleged delays to warrant tolling, since the majority of the documents White attaches are five or more years old. In any

event, even considering the new documents, White has not demonstrated any meritorious § 2255 claim that the court denied because of the alleged fraud.

(1) Targeting White.

White's first allegation of fraud during the § 2255 proceedings is based on these statements in the government's motion to dismiss:

a) "White makes fantastic and contradictory arguments that the government has conspired against him," that are merely a "cryptic and unsubstantiated recitation of a grand conspiracy" that does not "unquestionably establish[ his] innocence." Mot. Dism. 18, 19, ECF No. 326.

b) "White claims that . . . the FBI targeted him pursuant to a JTTF[3] operation (which it did not)." Id. at 29.

c) "White's fantastical claims are without merit; he has not proffered any evidence to support the accusations; and he has not met his burden of showing how the alleged misconduct affected the outcome of the trial in any event."[4] Id.

According to White, his attached evidence proves that these representations in the motion to dismiss were false and, therefore, fraudulent. He further asserts that the following section of the

---

[3] The acronym, JTTF, apparently refers to Joint Terrorism Task Force, an investigative technique in which federal and local law enforcement agents work together to collect and share evidence related to possible terrorism, both international and domestic. See Federal Bureau of Investigation ("FBI"), https://www.fbi.gov/investigate/terrorism/joint-terrorism-task-forces.

[4] This section of the government's brief characterizes White's claims as follows:

> Over the course of his petition, White accuses government agents and representatives of intentionally making misrepresentations and framing him for a crime that he allegedly did not commit. In essence, White claims that the entire government has conspired against him and that "trials in American federal courts are a form of lying, an orchestrated theater of deceit." Petition at 13. He also levies specific accusations that the FBI intentionally lost or altered evidence (which it did not), that the FBI targeted him pursuant to a JTTF operation (which it did not); and that generally speaking, there was misconduct with the forensic evidence presented at trial (which there was not).

Mot. Dism. 29, ECF No. 326.

court's opinion proves that the government's alleged fraud adversely affected the court's decision to deny relief under § 2255:

> White argues that counsel provided ineffective assistance because he did not challenge the fact that White had been "the target of an FBI-JTTF counterintelligence operation" and that the government has stolen his identity in order to commit crimes and frame him. § 2255 Mot. at 65, 69, ECF No. 300. White has faced numerous federal charges and has been investigated for each one. However, his claims that the Federal Bureau of Investigation ("FBI") targeted him, framed him because of his beliefs, and prevented witnesses from testifying in his defense are "palpably incredible." Blackledge v. Allison, 431 U.S. 63, 76 (1977). He provides no proof, other than his personal observations and assessments of various internet sites, letters he claims were sent to people by the government but in his name, and statements by unnamed witnesses. Because these claims are "patently frivolous or false," counsel was not remiss for failing to investigate them. Id.; Strickland[ v. Washington, 466 U.S. 668, 687 (1984).]

White, 2017 WL 2378018, at *4.

The court finds no evidence of fraud here. White's new evidence regarding this allegation consists of FBI records of investigative interviews and observations of White. At least one document expressly states that "the United States Department of Justice has opened a broader investigation into White and potentially illegal and threatening activities he is involved in across the United States. Special Agent [name redacted] . . . has been designated as the OO for this national initiative targeting Bill White and the [American National Socialist Workers Party]." Am. Mot. Ex. I(c), at 46, ECF No. 392-3. White's evidence does not, however, demonstrate that White's trial attorney in this case acted unprofessionally in failing to investigate further White's complaints of being targeted and framed by government agents for crimes he did not commit. Nor does the court find a reasonable likelihood that presenting any of White's current evidence at trial or in the § 2255 proceeding would have resulted in different outcomes for those proceedings. Simply stated, none of these FBI records undermines confidence in the evidence presented at trial that White threatened to injure his wife to intimidate her into providing him continued income while

he was a fugitive. The court is satisfied that White was prosecuted for this unlawful conduct and not for his political views. Moreover, White has not shown that the government's representations in the motion to dismiss concerning official investigation of his activities had any bearing on the court's decision that White was not entitled to § 2255 relief on this ineffective assistance claim. Because this fraud claim was filed more than one year after the court's order denying relief under § 2255 and because White has not demonstrated a viable theory on which he could succeed on the underlying ineffective assistance claim, the court will deny his Rule 60(b) motion as to this allegation.

      (2) Destruction of Evidence of Torture.

White has alleged that confinement conditions he encountered in federal prison amounted to torture and caused him to develop post-traumatic stress disorder ("PTSD"), among other mental health maladies. He further claims that federal officials prevented him from obtaining medical evidence to prove that he suffered from PTSD at the time of the offense conduct in this case. Among documents attached to his Rule 60(b) motion is a psychological evaluation conducted on White in the summer of 2019, Am. Mot. Ex. H(f), ECF No. 392-2.

Based on this evidence, White asserts that the following statement in the government's motion to dismiss is false and fraudulent:

> The claim [that counsel was ineffective for not requesting a psychological evaluation] fails for the additional reason that White has not met his burden of showing how a psychological evaluation would have made any difference to the outcome of the proceedings. . . . There is no finding that White does not know right from wrong or is otherwise prone to dissociative states of mind.

Mot. Dism. 40, ECF No. 326.

The § 2255 claim at issue here alleged ineffective assistance by trial counsel. White asserted that counsel should have investigated and presented evidence that torture White suffered

8

in federal custody caused him to develop PTSD, resulting in an alleged inability "to formulate mens rea during the period when crimes were committed." White, 2017 WL 2378018, at *5. White faulted counsel for failing to hire a psychologist to evaluate his condition and testify in his defense.

> In addressing White's mental health claim, however, the court held that
>
> White's argument is unavailing. White's theory, throughout the trial, was that he did not write the threatening emails. He continues to argue: "I did not commit the actus rea of these crimes," even as he asserts that he "was also unable to formulate mens rea during the period of time when crimes were committed." § 2255 Mot. at 120, ECF No. 300. Because White has never admitted to writing the emails, he cannot successfully claim that his mental state during the time that the emails were written and sent was relevant. As such, White cannot establish that counsel erred by failing to make an argument that ran counter to the expressed and agreed upon trial strategy. Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010); see also United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999) (noting that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"). White has not established that counsel performed in a deficient manner by failing to hire a psychologist or that he suffered prejudice from the lack of such an expert.

Id. The court cannot find that White's new psychological evidence demonstrates any fraud that contributed to this holding or any reason that his Rule 60(b) motion on this issue should be deemed timely filed or meritorious.

White also claimed in his § 2255 motion that counsel should have presented evidence of his PTSD as a mitigating factor at sentencing, particularly to argue that he did not have the mens rea to support the obstruction of justice enhancement that the court imposed. Again, the court rejected this ineffective assistance claim under Strickland.

> A downward departure may be warranted if a defendant can show that he committed the offense "while suffering from a significantly reduced mental capacity" which "contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. In order to establish that the defendant suffered from a "significantly reduced mental capacity" he must show that he was "unable to process information or to reason." United States v. Goossens, 84 F.3d 697, 701

9

>  (4th Cir. 1996). White has produced no evidence to suggest that he could not process information or reason when he sent the threatening emails. In fact, it appears that White displayed considerable mental agility in fleeing to Mexico and attempting to obtain money from his ex-wife so that he could continue to live there. Moreover, although White argues that he "has no memory of committing the crimes," and believes that his testimony was truthful, and thus that he should not have been subjected to an obstruction of justice enhancement at sentencing, he presented no evidence that this type of dissociation occurred. His counsel, however, objected to the obstruction of justice enhancement, arguing that "Bill White believes from the bottom of his heart that he didn't send these emails in question." Sent. Hr'g Tr. at 21, ECF No. 214. However, the court rejected defense counsel's argument and the Fourth Circuit affirmed. White, 810 F.3d at 230. Therefore, this claim is without merit. United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that claims "already addressed and rejected on direct appeal," cannot be relitigated in a § 2255 motion absent a change in the law warranting reconsideration).

Id.

The 2019 psychological evaluation White now presents suggests that prison conditions in 2008, "may have together, triggered [White's later diagnosed] mental disorder" of PTSD. Am. Mot. Ex. H(f), at 52, ECF No. 392-2. This new information, however, does not demonstrate that anyone fraudulently concealed evidence of White's mental disorders from counsel at the time of sentencing or at any time since. Finding this fraud claim to be both untimely filed and deficient on the merits, the court will deny White's Rule 60(b) motion on this ground.

(3) Selective Prosecution.

In claim 11 of White's § 2255 motion, he contended that federal law enforcement had selectively targeted him for prosecution "because of his belief that the federal government is corrupt and other unpopular views." White, 2017 WL 2378018, at *8. White claims that the following statements in the motion to dismiss his § 2255 motion were fraudulent: "White's conviction has nothing to do with his . . . political speech," Mot. Dism 1, ECF No. 326; "The government has no interest in stifling, or, meddling in, White's political speech," id. at 22; and

"The government's decision to prosecute White was not impermissible prosecution," id. at 23.

The court rejected White's selective prosecution claim for multiple reasons:

> White raised a similar claim before the Fourth Circuit, arguing that he had been targeted for prosecution because of his political beliefs. White, 810 F.3d at 230-31. The Fourth Circuit rejected his claim and, accordingly, White cannot raise it on collateral review. Id.; see also Roane, 378 F.3d at 396 n. 7 (claims already addressed and rejected on direct appeal cannot be relitigated).
> Moreover, this claim fails on the merits. The Due Process Clause does not allow the government to prosecute a criminal case based on an "unjustifiable" factor, such as race, religion, or the exercise of a constitutional right. United States v. Armstrong, 571 U.S. 456, 464 (1996). However, absent a clear and substantial showing of such impermissible conduct, the government's decision to prosecute is presumed to be motivated by proper considerations. Id.; see also United States v. Hastings, 126 F.3d 310, 313 (4th Cir. 1997) (noting that "[a] criminal defendant bears a heavy burden in proving that he has been selected for prosecution in contravention of his constitutional rights"). "The Attorney General and the United States Attorneys retain broad discretion to enforce the Nation's criminal laws." Armstrong, 571 U.S. at 464 (internal quotation marks omitted).
> Although at White's sentencing, the court intimated that the government might have been trying to punish White for his beliefs, the government asserts that it prosecuted White in federal court because he is a career criminal. Gov't Resp. at 22, ECF No. 326. The Fourth Circuit considered the district court's statements but ultimately concluded that it had not erred. White, 810 F.3d at 230-31. Accordingly, White has not established that the government acted in contravention of his constitutional rights.

White, 2017 WL 2378018, at *8.

In White's current motion, he attempts to disprove the government's assertion that he is a career criminal, primarily through his unsupported assertions that he has been repeatedly prosecuted in federal court for conduct that, according to White, is not criminal. Careful review of White's submissions does not persuade the court to reopen this aspect of the § 2255 proceedings. None of his submissions here undermines confidence in the jury's verdict that White threatened his ex-wife through email or creates doubt that this unlawful conduct, not his political speech, was the impetus for the prosecution. Finding no meritorious defense or basis to excuse White's untimely filing of the Rule 60(b) motion, the court will deny his motion as to this claim.

(4) Threats to Tenants.

Finally, White complains that in the § 2255 proceeding, the government falsely represented the outcome of a 2008 prosecution. In a background section on White's prior convictions, the motion to dismiss stated:

> In 2008, a jury in the Western District of Virginia convicted White of witness tampering under 18 U.S.C. § 1512(b)(1) and making interstate threats with the intent to injure under 18 U.S.C. § 875(c) ("the WDVA case"). White was a landlord for low-income housing in Roanoke City and, among other things, had threatened certain of his minority tenants who had filed a HUD complaint alleging racial housing discrimination. The jury found that White's threats were intended to intimidate the tenants and stop them from pursing litigation against White. United States v. White, No. 7:0[8]-CR-00054, 2010 WL 438088 (W.D. Va. Feb. 4, 2010).

Mot. Dism 1-2, ECF No. 326. In fact, this 2008 case was not based on White's conduct toward his Roanoke tenants. Rather, among other things, White was convicted of "intimidation to influence, delay, and prevent the testimony of African-American tenants in Virginia Beach against their landlord by mailing intimidating letters to the tenants," who had filed a housing discrimination complaint against that landlord. See United States v. White, 670 F.3d 498, 514 (4th Cir. 2012). As such, the statement in the motion to dismiss is an inaccurate representation of the facts supporting White's previous conviction. White fails to demonstrate, however, that this erroneous account of an unrelated, prior case was presented by the government with any intent to deceive the court or that it had any adverse effect whatsoever on the court's decision to deny White's § 2255 motion.

(5) Motion for Sanctions.

Based on the allegations of fraud outlined herein, White also demands that the court sanction counsel for the government. He cites to Rule 11(b)(1) through (4), which authorizes sanctions against a party or an attorney in certain limited circumstances. Under this rule, an attorney who signs and submits a pleading to the court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose," "(2) the . . . defenses, and other legal contentions are warranted" by existing law or reasonable extensions thereof, "(3) the factual contentions have evidentiary support," and "(4) the denials of factual contentions are warranted on the evidence." Fed. R. Civ. P. 11(b)(1)-(4). If the court determines that an attorney or party has violated Rule 11(b), "the court may impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

At the most, White has demonstrated that some isolated statements in the motion to dismiss are not completely accurate. For the reasons already discussed, however, White has not shown that any of the pinpointed statements, taken in context, was presented for any improper purpose that mislead the court into ruling against White in the § 2255 proceedings. Accordingly, the court concludes that no sanction is warranted, and White's motion will be denied.[5]

---

[5] In his motion for sanctions, White states that he is also seeking to vacate the order denying his § 2255 motion, based on Rule 60(d)(3). The so-called "savings clause in Rule 60(d)(3) permits a court to exercise its inherent equitable powers to obviate a final judgment after one year for 'fraud on the court.'" Fox ex rel. Fox v. Elk Run Coal Co., 739 F.3d 131, 135–36 (4th Cir. 2014). To qualify for relief under Rule 60(d)(3), "not only must fraud on the court involve an intentional plot to deceive the judiciary, but it must also touch on the public interest in a way that fraud between individual parties generally does not." Id. at 136. Because White has shown neither any intention to deceive this court nor any implication that his claims affect public interest, the court finds no merit to his request for relief under Rule 60(d)(3).

(6) Motion regarding Grand Jury Records.

By order entered June 30, 2020, ECF No. 393, the court dismissed without prejudice White's motion that expressly sought disclosure of grand jury matters of this court "between 2005, and 2006, targeting myself, William A White." Mot. 1, ECF No. 386. As the court's order informed White, he may pursue disclosure of these grand jury matters in United States v. White, No. 7:20mc00002, which includes his similar motions before another judge of this court, concerning the same records. White now contends that his motion in this case also involved other grand jury records as well. He is advised that if he seeks disclosure of additional grand jury records, he may file a separate, clearly stated motion requesting such records and providing justification for their disclosure. His motion for reconsideration of the court's prior order will be denied. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the defendant and counsel of record for the government.

ENTER: This 10th day of December, 2020.

_____

Senior United States District Judge