CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

NOV 14 2023

LAURA A. AUSTIN CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

## Roanoke Division

| | |
|---|---|
| United States of America | |
| v. | Case No. 13-cr-013 |
| William A White | |
| Defendant | |

## MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 USC § 3582(c)(2), USSG §1B1.10 AND AMENDMENT 821

Comes Now the Defendant, William A White, and I hereby Move this Court to Reduce my Sentence in this matter from 92 months to 78 months Pursuant To 18 USC § 3582(c)(2) And USSG §1B1.10 And Amendment 821 to the United States Sentencing Guidelines. In support, I state as follows:

### Factual And Procedural Background

1) On May 7, 2012, while I was on supervised release, I left the United States and entered Mexico in violation of the terms of such release. Between May 27 and June 7, 2012, Sabrina Gnos, acting at the encouragement if not the instructions of FBI Special Agent Thomas David Church, Jr, sent four threatening emails under my name to my wife, Meghan White. The United

-1-

States Attorney's Office for the Western District of Virginia decided to frame me for these crimes. On June 8, 2012, I was arrested for violating the terms of my supervised release. In February 2013, I was indicted in this matter, and, after a trial marred, as I describe in my post-conviction proceedings, by ineffective defense counsel, prosecutorial perjury and concealment of material evidence of my innocence, I was wrongfully convicted. On May 6, 2014, I was sentenced to 92 months imprisonment.

2) My criminal history was presented in my Pre-Sentencing Report ("PSR" at para 53-55. I was initially scored with six criminal history points PSR para 53, to which two points were added because I was on supervised release at the time the FBI and its proxies committed the offense. PSR para 54. My criminal history category at sentencing was IV, PSR para 55, with an offense level of 26. PSR para 26. My guidelines were 92-115 months. PSR para 68.

3) Under Amendment 821 to the United States Sentencing Guidelines, I would not have received the two criminal history points for being on supervised release when the instant offense was committed. USSG §1B1.10(d) makes this retroactive. Without these two points, I am criminal history category III, level 26, with guidelines of 78-97 months

4) The BOP projects that my Good Conduct Time release date is in 2037. How-

ever, the BOP is still unable to calculate projected First Step Act release dates. Under the FSA, I will currently be released to a halfway house or home confinement between 2029 and 2031, my recidivism falling to a "low" no later than 2028. If my sentence is reduced, I will be released between 2028 and 2030.

5) I have now twice refused to accept reprieves from my sentence offered by the United States:

a) I was first offered a reprieve in September 2018, where I was told I would be released from prison if I would agree to testify against Matthew Hale in the murders of Michael Lefkow and Donna Humphrey and work for the FBI "only targeting blacks and Hispanics". I declined the offer;

b) A second offer was extended December 29, 2021. There, the United States told me that if I would cooperate, testify, "accept responsibility" for the various fraudulent crimes it had charged me with, and "stop criticizing the Jews", it would release me and employ me in creating a "Republican extremist group, and at the end of my employment, I would be pardoned. I declined the offer;

c) After I declined the December 29, 2021, offer, the United States threatened to release me against my will, saying that I would then either "have to work for it or return to prison. To prevent me from being released against my will, in November 2022, I withdrew my application for a pardon.

-3-

6) In prison, I spend most of my day suing the United States on behalf of other inmates.

a) Since the beginning of this year, I've won sentence reductions in the following cases:

i) United States v. Bowers 2023 US Dist LEXIS 136506 (D Me 2023) (9 year reduction | §3582 (c)(1)(A)(i) );

ii) United States v. Adams D Md Case No: 19-cr-0286-ELH-21 (21 month reduction | §3582 (c)(1)(A)(i) );

iii) Aciesno v. Carter DMd (BOP released inmate to moot action | 18 USC §2241);

iv) Rodriguez v. Carter DMd (BOP restored 41 days GCT to moot | 18 USC §2241);

v) Cox v. Carter DMd (BOP restored 41 days GCT | 18 USC §2241);

vi) plus numerous state actions;

b) I've also defended or won numerous cases against the United States or its surrogates:

i) United States v. Bin Laden sub nom al-Owhali v. United States 36 F4th 461 (2nd Cir 2022) (28 USC §2255 on 18 USC §924 (c));

ii) United States v. Duka 27 F4th 189 (3rd Cir 2021) (28 USC §2255 on actual innocence and 18 USC §924 (c));

iii) United States v. Faris 2018 US Dist LEXIS 115472 (SD Ill 2018) (deportation case that enraged Donald Trump);

iv) United States v. al-Kassar 850 Fed Appx 815 (2nd Cir 2021) (18 USC

-4-

§ 3582 (c)(1)(A)(i));

v) Sines v. Kessler 2023 US Dist LEXIS 40218 (W.D.Va 2023) (I assisted Christopher Cantwell's defense, shut out the federal civil rights claims and two plaintiffs);

vi) el-Kassar v. United States SD Ill Case No. 18-cv-086-JPH (the United States had offered $35,000 to settle last I heard);

vii) Smadi v. Michaelis 2020 US Dist LEXIS 239487 (SD Ill 2020) (settled for $2000);

viii) Smadi v. True 783 F Appx 633 (7ᵗʰ Cir 2019) (settled for $1000)

ix) and a score or more more.

c) I have also won several other cases against the United States, including:

i) United States v. Davis ND Ill Case No. 13-cr-772 (partial dismissal of indictment);

ii) Daniels v. Owens ND Ill Case No. 15-cv-5700 (BOP released inmate to moot 28 USC § 2241).

7) When I'm not suing the United States, I do two things. One, I practice yoga. Two, I study religion, philosophy and history and write literature exposing Satanic Judaism and the Judaeo-occult.

8) Further, in December 2021, the BOP finally recognized my diagnosis of Post-Traumatic Stress Disorder and began treating me with mirtazapine. As a result my PTSD is in remission.

-5-

Argument - Standards

9) 18 USC §3582 (c)(2) permits the Court to reduce a sentence when a retroactive change to the sentencing guidelines lowers the sentencing range. USSG §1B1.10 implements 18 USC §3582(c)(2). USSG §1B1.10(a)(3) states that such a resentencing is not a "full resentencing" and USSG §1B1.10(b) gives the resentencing procedure. The Court only applies the retroactive guideline change. USSG §1B1.10(b)(1)

10) Supreme Court and Fourth Circuit precedent describe the two-step process in resentencing a person under 18 USC §3582 (c)(2). United States v. Martin 916 F3d 389 (4th Cir 2019) citing Dillon v. United States 560 US 817 (2010). First the Court determines whether or not the person is eligible. Martin citing Dillon. Then it considers the 18 USC §3553(a) factors. Martin citing Dillon. In so doing, the Court should consider any new mitigating evidence. United States v. Chavez-Mera 138 SCt 1959 (2018) citing Rita v. United States 551 US 338 (2007). It must then provide an individualized explanation for its decisions. Martin

Argument

11) Amendment 821 to the USSG reduces my guideline range in this matter from 92 to 115 months to 78 to 97 months. Thus, I am eligible; and, the Court may resentence me to between 78 and 92 months. USSG §1B1.10 (b)(1)

12) At the original sentencing in this matter, Judge Turk remarked that the crimes charged in this case didn't merit 30 days in the county jail, but, he was

imposing a sentence of 92 months to virtue signal his support for Satanic Judaism.

13) Before I was arrested, the majority of my time was spent operating a business and raising a family. Only in my spare time did I target the FBI's counter-extremism activities. Now, in prison, I spend essentially all of my time either working to free "terrorists" and criminals back into America's rotting communities, or, writing anti-Jewish literature. In short prison gives me nothing but time which I use to work against the United States and international Zionism. Further, I enjoy this, which is why I've refused every offer the United States has made to release me.

14) The United States, in turn, has spent five plus years begging for my cooperation. At some point, it realized that it has so little leverage over me that it would actually have to give me something so that it could threaten to destroy it if I didn't do as directed. And, I, in turn, value being part of America's degenerate community so little that I placed their offers at naught.

15) Similarly, the amount of time at issue here is only slightly more than the BOP's discretionary authority over when to release me. Whether I'm released to home confinement at age 51 or 53 really doesn't matter to me. The only question before the Court is whether it wishes to have the United States provide me with food, clothing and shelter, freeing me up to write and publish anti-Jewish literature,

-7-

for 14 months more or less.

16) The truth is that, when I was a child, I wanted to be a philosopher. I wanted to study, read history and religion, and write all day. And that is basically what I do in prison at the United States' expense every day. Once my PTSD was brought under control, I realized how much I despised this country - not just its corrupt Judaized government, but all of its institutions, its people, it's culture, and the Judaized pseudo-"Western" civilization which created it - and how little I wanted to be a part of it. In prison, the Judenpresse doesn't waste its time slandering me, the FBI and DOJ cannot meaningfully prosecute me, I'm not in danger of being kidnapped and tortured as part of some show trial, and, no one impersonates me on the internet. So, the Court should not, in evaluating the 18 USC §3553(a) factors, make the mistake of believing that, in denying this motion, it would be providing me with any sort of "punishment" or "accountability." I went far beyond the power of the United States or this court to "punish" or "hold accountable" years ago and will not return while I remain here.

17) One federal judge - admittedly a crooked and dishonest one - estimates that my supporters gave me $90,000.00 (ninety thousand dollars and zero cents) in a three year period. White v. United States 2021 US Dist LEXIS 183954 (SD Ill 2021). When I'm released, I will reside with my 83-year old mother and 44-year old disabled brother until I'm able to re-establish myself. I expect that my writing and supporters will bring me $250,000 to $500,000 a year, depending on how

-8-

quickly I can build a mailing list. I don't need to work or contribute to the United States in any way and don't intend to.

18) So, nothing has changed since my initial sentencing except my guideline range. I am remorseless, refuse any responsibility, and resolutely anti-Jewish and anti-American. The only thing that has changed over a decade is that whatever respect I had for America's institutions and its laws has completely eroded, and I have absolute contempt for the people and system which prosecuted this case.

Respectfully Submitted,

William A White # 13888-084

FCI-Cumberland

PO Box 1000

Cumberland, MD 21501

CERTIFICATE OF SERVICE

I hereby certify that this Motion for Reduction of Sentence was mailed to the Clerk of the Court and the US Attorney's Office for the Western District of Virginia, 1ST Class Postage Prepaid, this 3rd day of November, 2023.

William A White

-9-

William A White # 13888-084
Federal Correctional Institution - Cumberland
PO Box 1000
Cumberland, MD 21501

BALTIMORE MD  212

7 NOV 2023   PM 5 . L



13888-084
Clerk Wd Va Us Dist Ct
210 Franklin RD SW
Room 308
Roanoke, VA 24011
United States

LEGAL MAIL